# EXHIBIT B

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This "Agreement" is made and entered into as of August 16, 1996 by and among **KPS Investment Company, Inc.**, ("Assignor"), **Krishan Corporation**, a California corporation ("Assignee"), and **DAYS INNS OF AMERICA, INC.**, a Delaware corporation (the "Company").

Recitals. Assignor is the Licensee under a License Agreement, Reservation Equipment Agreement and Master Confidentiality Agreement, all dated December 4, 1992 (collectively, the "License Agreement") with the Company. The License Agreement is attached to this Agreement as Exhibit A and relates to the granting of a Days Inn System license for a lodging facility designated as Unit No. 4703, located at 2460 Fontaine Road, San Jose, California (the "Facility"). Assignor is conveying the Facility to Assignee. Assignor desires to assign the License Agreement to Assignee, which desires to assume and accept the rights and obligations under the License Agreement, effective as of the date of this Agreement.

IN CONSIDERATION of the premises, the mutual promises in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, it is agreed as follows:

1. Assignor assigns, transfers, bargains, sells, and delegates to Assignee all of its rights, title and interest in and to the License Agreement, and its obligations existing and arising in the future, under the License Agreement.

2. Assignee accepts and assumes the rights, benefits and obligations of the Licensee under the License Agreement, effective as of the date of this Agreement, including all existing and future obligations to pay and perform under the License Agreement. Assignor shall remain secondarily liable for payment and performance of the License Agreement. The owner of Assignee has executed the Guaranty attached to this Agreement.

3. To induce the Company to consent to this Agreement and the assignment of the License Agreement, Assignee adopts and makes to the Company the representations and warranties of Licensee set forth in the License Agreement as of the effective date of this Agreement. Assignee is the owner of fee simple title to the Facility as of the effective date of this Agreement. Assignee's owners are shown on Exhibit "B" attached to this Agreement.

4. Assignee will deliver, together with this Agreement, evidence of insurance meeting System Standards, as contemplated under the License Agreement and the Days Inn System Standards Manuals.

5. This Agreement shall be deemed a supplement to and modification of the License Agreement. All references to "the License Agreement" contained therein shall mean and refer to the original form of License Agreement or Reservation Equipment Agreement as the case may be, as modified by any prior amendments and addenda and this Agreement. Except as expressly stated, no further supplements to or modifications of the License Agreement are contemplated by the parties. There are no oral or other written arrangements between the Company and

Assignor except as expressly stated in the License Agreement and any written amendment or addendum thereto included as part of Exhibit "A". The License Agreement, as previously modified, are incorporated by this reference.

6. Assignor and Assignee acknowledge that the Company has not participated in the negotiation and documentation of the transfer transaction between the parties, and has not made any representation or warranty, nor furnished any information to either party. Assignee waives any and all claims against the Company and its officers, directors, shareholders, affiliated corporations, employees and agents arising out of the transfer of the Facility. Assignee expressly acknowledges that the Company was not a participant in such transaction and that the Company has no liability in connection therewith. Assignee acknowledges that it has made such investigations of Assignor and the Facility as it believes appropriate.

7. Any notice required under the License Agreement to be sent to Assignee shall be directed to:

>   Krishan Corporation
>   2460 Fountaine Road
>   San Jose, CA 95121
>   Attn: Mr. Pete Patel

8. The Company consents to the assignment and assumption of the License Agreement as provided in this Agreement. No waivers of performance or extensions of time to perform are granted or authorized. The Company will treat Assignee as the Licensee under the License Agreement.

9. A replacement Declaration of License Agreement will be properly executed and notarized by Assignee concurrently with this Agreement or upon the Company's request, releasing the Declaration of Assignor.

{THE BALANCE OF THIS PAGE IS INTENTIONALLY BLANK}

IN WITNESS WHEREOF, the undersigned have executed and delivered this Agreement effective as of the date first above written.

**THE COMPANY:**
**DAYS INNS OF AMERICA, INC.**

By: _____     Attest: _____
Russell A. Moserowitz
Vice President
Franchise Compliance

**ASSIGNOR:**
**KPS Investment Company**

By: _____     Attest: _____
Pankaj K. Patel                 Khushal D. Patel
President                       Secretary

**ASSIGNEE:**
**Krishan Corporation**

By: _____     Attest: _____
Pankaj K. Patel                 Khushal D. Patel
President                       Secretary

# EXHIBIT C

Unit#: 4703-13718-1                                                                 Location: San Jose, CA

## REINSTATEMENT AGREEMENT

This **REINSTATEMENT AGREEMENT** (the "Agreement") is dated as of ~~May~~ June 22, 2004 (the "Effective Date") between **DAYS INNS WORLDWIDE, INC.**, a Delaware corporation ("we," "us" or "our") and **KRISHAN CORPORATION**, a California corporation ("you" or "your").

Recitals. This Agreement relates to a License Agreement, dated December 4, 1992 and assigned on August 16, 1996 (the "License Agreement") granting you a Days® System License (the "License") to operate a Days guest lodging facility located at 2460 Fontaine Road, San Jose, California, 95121, and designated as Unit #4703-13718-1 (the "Facility"). We terminated the License Agreement on February 27, 2004 for outstanding monetary issues. However, we now propose to reinstate your License under this Agreement. The License Agreement is incorporated by reference into this Agreement.

1. Reinstatement Date. The License will be reinstated effective February 27, 2004 (the "Reinstatement Date"). You and we will resume performance of our obligations under the License Agreement and the ancillary agreements for the Facility as of that date.

2. Payment of Outstanding Fees and Charges. (a) You acknowledge your obligation to pay us the amount of $117,674.63 to resolve your obligation to pay all outstanding Recurring Fees and charges due under the License Agreement. DIW has attached an itemized statement detailing the fees past due.

(i) You will pay to us the amount of $50,000.00 in partial settlement of this obligation. You will pay this amount via electronic wire transfer by May 25, 2004.

(ii) You will execute and deliver to DIW the Promissory Note in the amount of $67,674.63 (the "Note") attached to this Agreement. The Note will be due and payable on November 1, 2004 unless the Note is cancelled under the terms specified in the Note. You authorize us to use the Automated Clearing House funds transfer system to pay fees due as specified in the Note. You will execute and complete the attached Addendum to the License Agreement for Electronic Funds Transfers ("Exhibit A").

3. Representations and Warranties. You represent and warrant to us that: (a) you have reported the Gross Room Revenues of the Facility accurately and correctly calculated the fees due during the term of the License Agreement; (b) you and your agents have not disclosed or made unauthorized copies of any Confidential Materials in violation of the License Agreement; (c) no consent of any third party is required to enter into this Agreement; (d) you have not filed a lawsuit or arbitration demand against us, our parent companies or affiliates; (e) you are not the subject of any pending bankruptcy, receivership, composition, assignment or similar proceeding; (f) you have obtained the necessary corporate authorization to execute and perform this Agreement; and (g) the persons negotiating and executing this Agreement on your behalf have been duly authorized by your owners.

4. Confidentiality. You acknowledge that the existence of this Agreement and the granting of the benefits herein are strictly confidential between us and you. Part of the consideration received by you for granting the benefits is your obligation to maintain confidentiality about this Agreement and its benefits. Therefore, you agree not to disclose to any person or entity the existence or subject matter of this Agreement, or the benefits granted hereunder, except under compulsion of law or to attorneys or accountants as needed for assistance with representation of or advice to you. Within your organization, information about this

Agreement will be disclosed to agents, officers, affiliates and contractors on a "need to know" basis only. If you violate this confidentiality obligation, no further benefits will be available from that time and thereafter, to the extent that the benefits have not then been fully utilized, and it will be obligated to refund to us the amount of benefits granted herein previously utilized upon written notice from us.

5. General Release. (a) By entering into this Agreement, you, for yourself and your successors and assigns, hereby release and waive any claims and causes of action against us, our officers, directors, employees, agents, shareholders and affiliates arising out of the offer, sale, execution, delivery, performance and termination of the License, the License Agreement and the related agreements regarding the Facility. This release applies only to those claims that were or could have been asserted relating to the Facility.

(b) Subject to your complete performance of your obligations under this Agreement, the License Agreement and any other Facility-related agreements, we, for ourselves and our successors and assigns, hereby release and waive any claims and causes of action against you arising out of the offer, sale, execution, delivery, performance and termination of the License, the License Agreement and the related agreements regarding the Facility. This release applies only to those claims that were or could have been asserted relating to the Facility.

6. Survival. Despite the mutual releases provided in Section 6, the parties agree that (a) the indemnification obligations specified in the License Agreement continue in full force for any events occurring during the period in which the License Agreement was in effect or for any events occurring during the period the Facility was operated using the Marks; and (b) the benefits of all insurance policies you obtained for the Facility accrue to us for events occurring during the period in which the License Agreement was in effect or for any events occurring during the period the Facility was operated using the Marks.

7. Consultation with Counsel. You acknowledge that they have consulted with, or had the opportunity to consult with, legal counsel of your own selection about this Agreement. You understand how this Agreement will affect your legal rights and voluntarily enter into this Agreement with such knowledge and understanding.

8. Consent to Jurisdiction. This Agreement will be governed by and interpreted under New Jersey law. The parties hereby consent and waive all objections to the non-exclusive personal jurisdiction of, and venue in, the United States District Court of New Jersey and the state courts situated in Morris County, New Jersey for the purposes of all cases and controversies involving this Agreement and its enforcement.

9. Execution in Counterparts. To facilitate execution of this Agreement by geographically separated parties, this Agreement may be executed in as many counterparts as may be required; and it shall not be necessary that the signatures on behalf of each party appear on each counterpart; but it shall be sufficient that the signature on behalf of each party appear on one or more of the counterparts. All counterparts shall collectively constitute a single agreement. It shall not be necessary in making proof of this Agreement to produce or account for more than a number of counterparts containing the respective signatures on behalf of all the parties hereto. All facsimile executions shall be treated as originals for all purposes.

10. Capitalized Terms. Capitalized terms not otherwise defined in this Agreement shall have the meaning assigned to that term in the License Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date indicated in the preamble.

**DAYS INNS WORLDWIDE, INC.**

Attest: _____
Assistant Secretary

By: _____
Birgit Gentile
Senior Vice President
Franchise Administration

**KRISHAN CORPORATION**

Attest: _____

By: _____
By: PANKAJ K PATEL
Title: OWNER

# EXHIBIT D

## GUARANTY

As an inducement to Days Inns of America, Inc. (the "Company") to execute the foregoing Assignment and Assumption Agreement, the undersigned, jointly and severally, hereby irrevocably and unconditionally (i) warrant to the Company and its successors and assigns that all of Assignee's representations and warranties in the Assignment and Assumption Agreement are true and correct as stated, and (ii) guaranty that all of Assignee's obligations as the substituted Licensee (hereinafter referred to as "Licensee") under the License Agreement, including any amendments thereto whenever made (the "Agreement"), will be punctually paid and performed.

Upon default by Licensee and notice from the Company, the undersigned will immediately make each payment and perform or cause Licensee to perform, each obligation required of Licensee under the Agreement. Without affecting the obligations of the undersigned under this Guaranty, the Company may without notice to the undersigned extend, modify or release any indebtedness or obligation of Licensee, or settle, adjust or compromise any claims against Licensee. The undersigned waive notice of amendment of the Agreement, the giving of notice or demand by the Company for payment or performance by Licensee, and acknowledge that Section 17 of the Agreement, including Section 17.6, "Waiver of Jury Trial", applies to this Guaranty.

Upon the death of an individual guarantor, the estate of such guarantor will be bound by this guaranty but only for defaults and obligations hereunder existing at the time of death, and the obligations of all other guarantors will continue in full force and effect.

The undersigned will not seek or accept indemnity, reimbursement or subrogation against Licensee for any amount paid under this instrument unless and until 367 days have elapsed from the date the Company receives payment of such amount.

IN WITNESS WHEREOF, each of the undersigned has signed this Guaranty as of the date of the above Agreement.

WITNESSES:                                        GUARANTORS:

_____                           _____
                                                  Pankaj K. Patel, Individually

# EXHIBIT E



Days Inns Worldwide, Inc.
1 Sylvan Way
Parsippany, New Jersey 07054-0278

FRANCHISE ADMINISTRATION

```
 Z2445X    APR 12, 2006     ACT WT  LTR        #PK 1
SERVICE 2DA                 BILL WT  LTR
TRACKING# 1Z22445X0252470319          ALL CURRENCY USD
COST CENTER: 006-5072
REF 2: SENT BY COMPLIANCE

HANDLING CHARGE 0.00
REFERENCE RATE CHARGES:           SERVICE    4.75 USD
DV  0.00           COD  0.00       RS   0.00
DC  0.00           HZMT 0.00       SD   0.00
AH  0.00           NTFY 0.00       SP   0.00        IL
TOT REF CHG   4.75        REF+HANDLING   4.75
```

April 12, 2006

Mr. Pankaj K. Patel
Krishan Corporation
P.O. Box 40
Pleasanton, CA 94566

Re:   **NOTICE OF MONETARY DEFAULT relating to Days® Unit #4703-13718-1 located in San Jose, CA (the "Facility")**

Dear Mr. Patel:

I write on behalf of Days Inns Worldwide, Inc. ("we," "our" or "us") regarding the License Agreement dated December 4, 1992 and assigned on August 16, 1996, between Krishan Corporation ("you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of April 10, 2006 your account is past due in the amount of $33,954.38. We have enclosed an itemized statement detailing the fees past due. Under the Agreement, you have 30 days to pay this amount to us in order to cure your default. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Days System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. We also reserve the right to take any interim steps permitted under the Agreement because of your default, such as suspending the Facility's access to our central reservation system. By copy of this letter, we are also informing your lender with which we have an agreement regarding the Facility of the default.

We hope you will take this opportunity to restore your good standing under the Agreement. If you have any questions regarding your default or how it can be timely cured, please call Rob Spence, Financial Services Manager, at (973) 496-7028.

Sincerely yours,

Kathy Cox
Senior Director
Franchise Administration

Enclosure

cc:   Nomura Asset Capital Corporation (Lender)    7001 0360 0003 3358 5356
      Joseph R. Kane, Jr.
      Rob Spence

# EXHIBIT F



Days Inns Worldwide, Inc.
1 Sylvan Way
Parsippany, New Jersey 07054

Tel 1-866-582-9104
Fax (973) 496-5345

FRANCHISE ADMINISTRATION

June 23, 2006

**VIA CERTIFIED MAIL**

Mr. Pankaj K. Patel
Krishan Corporation
P.O. Box 40
Pleasanton, CA 94566

7001 0360 0003 5358 6568

Re: NOTICE OF CONTINUING MONETARY DEFAULT relating to Days® Unit #4703-13718-1 located in San Jose, CA (the "Facility")

Dear Mr. Patel:

I write on behalf of Days Inns Worldwide, Inc. ("we", "our" or "us") regarding the License Agreement dated December 4, 1992 and assigned on August 16, 1996, between Krishan Corporation ("you" or "your") and us (the "Agreement"). You will recall that, on April 12, 2006, we sent you a default notice because of your failure to meet your financial obligations to us. That notice required you to cure the default within thirty days. However, you did not cure your default within the time permitted.

Your failure to cure your default within the time permitted also allows us to terminate the Agreement (including your License to operate the Facility as a Days facility) immediately upon written notice to you. We would prefer, however, to keep our affiliation with you. Accordingly, we will allow you an additional period of 30 days from the date of this letter to cure your default. Please be advised that as of June 16, 2006 your account is now past due in the amount of $48,501.72. We have enclosed an itemized statement detailing the fees past due. Please understand that we are not waiving this default or any other default under the Agreement by extending your cure period. We are simply giving you a final opportunity to avoid termination.

By copy of this letter, we are also informing your lender with which we have an agreement regarding the Facility of your default.

We hope you will take this opportunity to resolve your monetary default. If you have any questions, please call Rob Spence, Financial Services Manager, at (973) 496-7028.

Sincerely yours,

Kathy Cox
Senior Director
Franchise Administration

Enclosure

cc: Nomura Asset Capital Corporation (Lender)
    Joseph R. Kane, Jr.
    Rob Spence

```
22445X      JUN 23, 2006        ACT WT  LTR           #PK  1
SERVICE 2DA                     BILL WT  LTR
TRACKING# 1Z22445X0254631730              ALL CURRENCY USD
COST CENTER: 006-5072
REF 2: SENT BY COMPLIANCE

HANDLING CHARGE  0.00
REFERENCE RATE CHARGES:                   SERVICE   4.75 USD
DV  0.00               COD   0.00             RS   0.00
DC  0.00               HZMT  0.00             SD   0.00
AH  0.00               NTFY  0.00             SP   0.00
TOT REF  CHG   4.75                    REF+HANDLING  4.75
```

# EXHIBIT G



Days Inns Worldwide, Inc.
1 Sylvan Way
Parsippany, New Jersey 07054

Phone (973) 753-8100
Fax (800) 643-2107

FRANCHISE ADMINISTRATION

December 28, 2006

VIA CERTIFIED MAIL

Mr. Pankaj K. Patel
Krishan Corporation
P.O. Box 40
Pleasanton, CA 94566

7001 0360 0003 3358 0726

Re: NOTICE OF MONETARY DEFAULT relating to Days® Unit #4703-13718-1 located in San Jose, CA (the "Facility")

Dear Mr. Patel:

I write on behalf of Days Inns Worldwide, Inc. ("we," "our," or "us") regarding the License Agreement dated December 4, 1992 and assigned on August 16, 1996, between Krishan Corporation ("you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of December 27, 2006 your account is past due in the amount of $70,118.61. We have enclosed an itemized statement detailing the fees past due. Under the Agreement, you have 30 days to pay this amount to us in order to cure your default. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Days System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. We also reserve the right to take any interim steps permitted under the Agreement because of your default. By copy of this letter, we are also informing your lender with which we have an agreement regarding the Facility of your default.

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please call Rob Spence, Financial Services Manager, at (973) 753-7646.

Sincerely yours,

Valerie Capers Workman
Vice President
Franchise Administration

Enclosure

cc: Nomura Asset Capital Corporation (Lender)
Joseph R. Kane, Jr.
Rob Spence

```
22445X     DEC 27, 2006       ACT WT  LTR            #PK 1
SERVICE 2DA                   BILL WT  LTR
TRACKING# 1Z22445X0254258082           ALL CURRENCY USD
COST CENTER: 006-5072
REF 2: SENT BY COMPLIANCE

HANDLING CHARGE 0.00
REFERENCE RATE CHARGES:             SERVICE   4.75 USD
DV  0.00              COD   0.00        RS   0.00
DC  0.00              HZMT  0.00        SD   0.00
AH  0.00              NTFY  0.00        SP   0.00
TOT REF CHG  4.75             REF+HANDLING   4.75
```