UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Bryan P. Couch
Connell Foley LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500
Attorneys for Plaintiff, Days Inns Worldwide, Inc.

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., a Delaware Corporation, f/k/a DAYS INNS OF AMERICA, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>KRISHAN CORPORATION, a California Corporation; and PANKAJ K. PATEL, an individual,<br><br>        Defendants. | Civil Action No. 07cv4753(PKC)<br><br>**AFFIDAVIT OF ROBERT SPENCE IN SUPPORT OF REQUEST FOR ENTRY OF FINAL JUDGMENT BY DEFAULT** |

STATE OF NEW JERSEY    )
                               )SS:
COUNTY OF MORRIS       )

    ROBERT SPENCE, being duly sworn, according to law, upon her oath, deposes and says:

    1.    I am the Senior Financial Services Manager for plaintiff, Days Inns Worldwide, Inc. ("DIW").

    2.    I make this affidavit, based upon my personal knowledge and review of the relevant documents, in support of DIW's motion for the entry of default judgment against defendants, Krishan Corporation ("Krishan") and Pankaj K. Patel ("Patel"), pursuant to Local Civil Rule 55.2.

1881021-01

**Background**

3. DIW does not own or operate hotels. Instead, DIW operates a guest lodging facility franchise system. The system, broadly stated, is composed of various trade names and service marks (which are on the principal register of The United States Patent and Trademark office), logos and derivations thereof (the "Days Inn Marks"), together with certain standards and centralized support functions, including a nationwide computer reservation system.

4. The hotels operating as part of the franchise system are all independently owned and operated. DIW allows its franchisees, pursuant to individual franchise or license agreements, to operate their hotels as Days Inn® guest lodging facilities utilizing the Days Inn Marks.

**The Relevant Terms of the License Agreement**

5. On or about December 4, 1992, DIW entered into the License Agreement with KPS Investment Company ("KPS") for the operation of a 54-room guest lodging facility located at 2460 Fontaine Road, San Jose, California, Site No. 4703-13718-1 (the "Facility"). A true copy of the License Agreement is attached hereto as Exhibit A.

6. On or about August 16, 1996, DIW, KPS and Krishan entered into an Assignment and Assumption Agreement (the "Assignment Agreement"), pursuant to which Krishan accepted the rights and obligations under the License Agreement. A true copy of the Assignment Agreement is attached hereto as Exhibit B.

7. DIW terminated the License Agreement on or about February 27, 2004, for outstanding monetary defaults.

8. DIW entered into a Reinstatement Agreement dated June 22, 2004 with Krishan ("Reinstatement Agreement"), which incorporated by reference the License Agreement. A true copy of the Reinstatement Agreement is attached hereto as <u>Exhibit C</u>.

9. Pursuant to section 6 of the License Agreement, Krishan was obligated to operate a Days Inn® guest lodging facility for a fifteen-year term.

10. Pursuant to section 7, section 8, section 24 and Schedule C of the License Agreement, Krishan was required to make certain periodic payments to DIW for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Continuing Fees").

11. Pursuant to section 16(e) of the License Agreement, Krishan was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Krishan at the Facility in the preceding month for purposes of establishing the amount of royalties and other Continuing Fees due to DIW.

12. Pursuant to section 16(d) of the License Agreement, Krishan agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to section 16(m) of the License Agreement, Krishan agreed to allow DIW to audit any financial records.

13. Pursuant to section 8(d) of the License Agreement, Krishan agreed that interest is payable "at the rate equal to the lesser of 1.5% per month or the highest rate permitted by applicable law on any past due Continuing Fees and other monies owed [DIW] under this Agreement… accrued from the due date."

14. Pursuant to section 23(c) of the License Agreement, Krishan agreed to "pay all costs and expenses, including reasonable attorneys' fees, incurred by [DIW] in enforcing any provision of this Agreement."

15. Effective as of the date of the Assignment Agreement, Patel provided DIW with a Guaranty of his obligations under the License Agreement ("Guaranty"). A true copy of the Guaranty is attached hereto as Exhibit D.

16. Pursuant to the terms of the Guaranty, Patel agreed, among other things, that upon a default under the License Agreement, he would "immediately make each payment and perform or cause Licensee to perform each obligation required of Licensee under the Agreement."

**The Defendants' Defaults**

17. Krishan has failed to timely pay Continuing Fees as required by the License Agreement.

18. By letter dated April 12, 2006, a true copy of which is attached hereto as Exhibit E, DIW advised Krishan that $33,954.38 in Continuing Fees was due and owing under the License Agreement, and that Krishan was in default under the License Agreement.

19. By letter dated June 23, 2006, a true copy of which is attached hereto as Exhibit F, DIW advised Krishan that $48,501.72 in Continuing Fees was due and owing under the License Agreement, and that Krishan was in default under the License Agreement.

20. By letter dated December 28, 2006, a true copy of which is attached hereto as Exhibit G, DIW advised Krishan that $70,118.61 in Continuing Fees was due and owing under the License Agreement, and that Krishan was in default under the License Agreement.

21.  By letter dated June 26, 2007, a true copy of which is attached hereto as <u>Exhibit H</u>, DIW advised Krishan that $114,645.87 in Continuing Fees was due and owing under the License Agreement, and that Krishan was in default under the License Agreement.

22.  By letter dated August 28, 2007, a true copy of which is attached hereto as <u>Exhibit I</u>, DIW advised Krishan that $134,828.64 in Continuing Fees was due and owing under the License Agreement, and that Krishan was in default under the License Agreement.

**Damages**

23.  DWI is seeking Recurring Fees in the amount of $154,229.13 inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to Section 8(d) of the License Agreement). Attached hereto as <u>Exhibit J</u> is a copy of an itemized statement prepared by DWI, which sets forth the amount of Recurring Fees due and owing from Krishan and Patel to DWI as of October 22, 2007.

_____
ROBERT SPENCE

Sworn and subscribed to before
me this 24th day of October, 2007

_____
Notary Public

NISREEN FADIL FADDOUL
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 8/16/2009